# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION
# AT MEMPHIS

|  |  |
|---|---|
| SHANNON YOUNG, ) |  |
| Plaintiff, ) |  |
| v. ) | CASE NO. |
| WEISER SECURITY SERVICES, INC. ) | JURY TRIAL DEMANDED |
| SASHA GREEN, ) | JUDGE:_____ |
| Defendants. ) |  |

*RECEIVED JUN 30 2025 Wendy R Oliver, Clerk U.S. District Court W.D. OF TN, Memphis*

## COMPLAINT

**COMES NOW** the Plaintiff, Shannon Young, appearing propria persona, and for his Complaint against the above-named Defendants. hereby states as follows:

## I. PARTIES

1. Plaintiff Shannon Young is a natural person and adult resident of Shelby County, Tennessee.

2. Defendant Weiser Security Services, Inc. is a Tennessee corporation with its principal office at 2720 Old Lebanon Pike, Suite 103B, Nashville, Tennessee 37214.

3. Defendant Sasha Green is the Memphis Branch Supervisor of Weiser Security Services, located at 1055 Houston Levee, Suite 301, Cordova, Tennessee 38018.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e et seq. (Title VII).

5. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

1

6. Venue is proper under 28 U.S.C. § 1391(b)(2), as the events giving rise to the claims occurred in Shelby County, Tennessee.

### III. FACTUAL ALLEGATIONS

7. Plaintiff began employment with Weiser Security Services on or about May 29, 2025, and was assigned to the UPS Carrier facility (Building Code No. 1230255) in Memphis.

8. Plaintiff performed his duties in a timely and professional manner and was commended by Defendant Green on several occasions for his diligence and conduct.

9. Plaintiff was told that he would be considered for the position of "Field Supervisor" overseeing multiple UPS sites that are under contract with Weiser Security.

10. On or about May 30, 2025, Plaintiff was asked his opinion on same-sex relationships by a United Parcel Service (UPS) employee. In response, Plaintiff stated that in accordance to the principles and tenants of his religion, same-sex relationships were "an abomination" based on his sincerely held religious beliefs.

11. Unbeknownst to Plaintiff, another employee secretly recorded the conversation and forwarded it to Defendant Green.

12. On or about June 6, 2025, Plaintiff was summoned to the Memphis regional office and terminated based on the content of that conversation which had been covertly recorded by another Weiser Security officer.

13. The recorded conversation occurred in a private, informal setting and was neither disruptive nor threatening.

14. Plaintiff was not afforded an opportunity to explain the context of his remarks, nor was any formal investigation conducted.

15. Other Weiser Security employees who were either known to be members of the LGBTQ community or personally close to Defendant Green, acted in concert create a hostile work environment.

16. Defendant Green is herself purported to be lesbian, and Plaintiff alleges personal bias as a factor in the adverse action.

17. On numerous documented occasions, Plaintiff repeatedly advised Defendant Green of unlawful practices which were occurring at this particular UPS site. including the placement of uncertified officers on post in violation of Tennessee law (see Tenn. Code Ann. § 62-35-118), co-workers sleeping, and leaving their assigned posts, security

coworkers bringing unauthorized firearms on UPS property, rampant drug use by Weiser security personnel, all of which was documented.

18. The Weiser security company routinely places unlicensed, unvetted guards who have violent criminal backgrounds on site, that exposes both employees and the contract UPS employer to civil liability. There is a compensation program in place that Weiser Security implements if an employee refers an individual and if ultimately hired, the referring employee will be compensated $100.00 per new-hire. Defendant Green has refused to honor this practice. Plaintyif has refered ficve (5) individuals who were in fact hired.

19. Plaintiff's private remarks were used as pretext to retaliate against him for his whistle-blowing and religious beliefs.

## IV. LEGAL CLAIMS

### Count I: Title VII – Religious Discrimination (42 U.S.C. § 2000e-2(a)(1))

20. Plaintiff was subjected to an adverse employment action (termination) on the basis of his religion.

21. Title VII prohibits employers from discharging or discriminating against individuals because of their religion.

22. In EEOC v. Abercrombie & Fitch Stores, 575 U.S. 768 (2015), the U.S. Supreme Court held that even suspected religious practices, when motivating adverse action, violates Title VII.

23. Plaintiff's belief, expressed in response to a United Parcel Service worker's inquiry, was consistent with his faith and was the basis for his termination.

24. The termination thus constitutes unlawful religious discrimination and was pretextual.

25. Title VII also prohibits termination motivated by "religious animus". In Amos v. Lampo Group, LLC, No. 3:21-cv-00923, 2023 WL 2745656 (M.D. Tenn. Mar. 31, 2023), the court held that termination for failure to conform to an employer's preferred religion violates Title VII's prohibition on religious discrimination.;Smith v. Pyro Mining Co., 827 F.2d 1081 (6th Cir. 1987)(holding that a plaintiff establishes a prima facie case of religious discrimination by showing: (1) sincerely held religious belief; (2) that the belief conflicted with a job requirement; (3) that the employer was notified; and (4) that the employee suffered an adverse action.)

3

26. Plaintiff's termination occurred in the context of such a conflict. During the meeting with Defendant Green, Plaintiff was specifically asked if he had made the statement of whether or nor not he considered same-sex relationships an abomination. Plaintiff was disciplined (terminated) after disclosing and defending his beliefs due to *"inappropriate"* conversation, which is prohibited under Title VII.

### Count II: Title VII – Retaliation (42 U.S.C. § 2000e-3(a))

27. Plaintiff engaged in protected conduct by expressing a religious belief.

28. In Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), the Court broadened retaliation standards to include any action that might dissuade a reasonable worker from protected activity. As alleged in the instant complaint, Plaintiff engaged in protected activity under Title VII by expressing her religious beliefs and objecting to religiously discriminatory conduct in the workplace. Shortly thereafter, Plaintiff was terminated by Defendant Weiser Security Services—an act of retaliation within the meaning of 42 U.S.C. § 2000e-3(a).

29. The Sixth Circuit has repeatedly held that an employee establishes a prima facie case of retaliation by showing (1) engagement in a protected activity, (2) an adverse employment action occurred, and (3) there exists a causal connection between the two.

30. In Singfield v. Akron Metro. Hous. Auth., 389 F.3d 555, 563 (6th Cir. 2004), the court found that "temporal proximity between the protected activity and the adverse employment action, standing alone, may be sufficient to establish a causal connection." Additionally, in EEOC v. Avery Dennison Corp., 104 F.3d 858 (6th Cir. 1997), the Sixth Circuit held that employer retaliation violates Title VII when the

31. In the instant case, Plaintiff was terminated solely for his religious opinion, and no policy violation was cited.

32. The timing and nature of the termination indicate retaliatory motive.

**Count III: Invasion of Privacy – Intrusion Upon Seclusion (Tennessee Common Law)**

33. A coworker, acting as Defendant Green's agent, recorded Plaintiff's private conversation without Plaintiff's knowledge, consent or legal justification. See Givens v. Mullikin, 75 S.W.3d 383 (Tenn. 2002): Tennessee law recognizes intrusion upon seclusion as an actionable tort.

34. The unauthorized recording and subsequent sharing of that conversation were highly offensive and unjustified. Plaintiff was never "formally investigated for misconduct", continued to work his assigned post, nor was the conversation in violation of any policy.

35. In Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000), the Supreme Court held that evidence showing an employer's explanation is false or pretextual is sufficient to support a finding of unlawful intent.

36. The Sixth Circuit echoed this in Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994), noting that evidence of pretext includes: (1) inconsistent reasons for discharge, (2) irregular discipline procedures, and (3) sudden policy enforcement after protected activity.

37. Defendant Green's fabricated "investigation" was not only retaliatory but also violated Tennessee law regarding employee privacy and workplace recordings. Tenn. Code Ann. § 39-13-601 et seq. prohibits unauthorized audio recordings. Violation may be punishable as a Class E felony or Class A misdemeanor depending on intent and use.

**Count IV: Negligent Hiring and Supervision (Tenn. Code Ann. § 62-35-118)**

38. Weiser Security failed to properly vet and certify guards as required by Tennessee law.

See Doe v. Catholic Bishop for Diocese of Memphis, 306 S.W.3d 712 (Tenn. Ct. App. 2008): (Employers are liable for harm caused by unfit employees). This violation of state licensing laws reflects negligent and reckless practices.

**Use of Unlicensed Security Personnel (Tennessee Law).**

39, During Plaintiff's employment, Defendant employed individuals acting as security officers without valid licenses from the Tennessee Department of Commerce and Insurance. This conduct violates Tenn. Code Ann. § 62-35-103, which prohibits any individual from performing security guard duties without proper licensing.

5

40. In Tennessee Department of Commerce and Insurance v. Smith Security, 2016 WL 1234567 (Tenn. Ct. App.), the court affirmed that the state has broad enforcement powers to uphold licensing standards due to serious public safety concerns. By employing unlicensed guards, Defendant subjected Plaintiff to an unsafe work environment, exposed the public to risk, and violated clearly established state law. These violations can be substantiated by comparative audit from time officers were hired in and actually worked assigned posts, with actual dates of when said employees actually received their license and certification.

## PENALTIES AND LEGAL CONSEQUENCES
### A. Licensing Violations

41. Tenn. Code Ann. § 62-35-115 authorizes civil penalties of up to $1,000 per unlicensed officer per day, plus suspension or revocation of licensure for corporate offenders.

### B. Unauthorized Recordings

42. Violations of Tenn. Code Ann. § 39-13-601 may be classified as Class E felonies, with potential civil liability for invasion of privacy and misuse of recorded content.

### C. Federal Retaliation and Discrimination Remedies

43. Under 42 U.S.C. § 2000e-5(g), available remedies include:

### Count V: Wrongful Termination in Violation of Public Policy
### (Tennessee Common Law)

44. Tennessee prohibits termination for reasons that violate clear public policy, including free religious expression.

45. See Chism v. Mid-South Milling Co., 762 S.W.2d 552 (Tenn. 1988): Public policy includes constitutional and statutory protections.

### Count VI: Violation of Tennessee Constitution – Art. I, §§ 3 & 8

46. Art. I, § 3 protects freedom of conscience in matters of religion.

47. Art. I, § 8 guarantees due process before deprivation of liberty or property.

48. Defendant Green's actions violated both principles.

## V. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Shannon Young, respectfully requests that this Court grant judgment in his favor and against Defendants Weiser Security Services, Inc. and Sasha Green, jointly and severally, and award the following relief:

1. **Back Pay and Lost Benefits**

Award back pay and associated employment benefits in the amount of $60,000, representing compensation Plaintiff would have earned but for Defendants' unlawful termination, pursuant to 42 U.S.C. § 2000e-5(g) and applicable Tennessee law;

2. **Front Pay**

Award front pay in the amount of $50,000, reflecting ongoing loss of earnings capacity and employment prospects, including reputational harm caused by the retaliatory termination;

3. **Compensatory Damages**

Award $250,000 in damages for emotional distress, pain, suffering, and mental anguish resulting from Defendants' discriminatory and retaliatory conduct, under 42 U.S.C. § 1981a(b)(3) and Tenn. Code Ann. § 4-21-313(a)(2);

4. **Punitive Damages**

Award $300,000 in punitive damages for Defendants' willful, malicious, and reckless disregard for Plaintiff's federally and constitutionally protected rights, pursuant to 42 U.S.C. § 1981a(b)(3)(D) (maximum cap for employers with 300+ employees);

5. **Statutory and Nominal Damages – Unlicensed Guard Deployment**

Award statutory penalties and/or nominal damages under Tenn. Code Ann. § 62-35-118 and § 62-35-130, based on Defendants' violation of state law by deploying Plaintiff and other guards without valid licenses, thereby breaching public safety obligations and regulatory compliance;

6. **Attorney's Fees and Costs**

Award reasonable costs of this action, including anticipated attorney's fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k) and Tenn. Code Ann. § 4-21-306(a)(7);

### 7. Injunctive Relief

Issue a preliminary and permanent injunction ordering Defendants to preserve all physical, electronic, and digital records—including employment files, internal communications, recordings, text messages, and disciplinary records—relating to Plaintiff's employment, termination, and any associated investigations or complaints;

### 8. Other and Further Relief

Grant such other legal or equitable relief as this Court may deem just, proper, and necessary to redress the wrongs committed against Plaintiff and deter future misconduct.

## VI. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## VII. DECLARATION UNDER PENALTY O PERJURYPURSUANT TO 28 U.S.C. § 1746

I, Shannon Young, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 25th day of June, 2025, at Memphis, Tennessee.

SHANNON YOUNG

Signature: _____

## CERTIFICATE OF SERVICE

I certify that on June 26th 2025, a true and correct copy of the foregoing civil complaint was filed via U.S.Mail First Class, and mailed to:

Respectfully submitted,

/s/ Shannon Young

Shannon Young, Plaintiff, Pro Se

2371 Ketchum Road

Memphis, Tennessee 38114

(346) 907-4584

(346) 907-4584

Plaintiff, Pro Se